1  SEYFARTH SHAW LLP
   Eric M. Lloyd (SBN 254390)
2  elloyd@seyfarth.com
   560 Mission Street, 31st Floor
3  San Francisco, California 94105
   Telephone:   (415) 397-2823
4  Facsimile:    (415) 397-8549

5  SEYFARTH SHAW LLP
   Michelle L. DuCharme (SBN 285572)
6  mducharme@seyfarth.com
   Bradley D. Doucette (SBN 322611)
7  bdoucette@seyfarth.com
   400 Capitol Mall, Suite 2350
8  Sacramento, California 95814
   Telephone:   (916) 448-0159
9  Facsimile:    (916) 558-4839

10 Attorneys for Defendants
   BioReference Laboratories, Inc. and OPKO
11 Health, Inc.

12                UNITED STATES DISTRICT COURT

13             EASTERN DISTRICT OF CALIFORNIA

14

15 DENISE LOPEZ, individually and on      Case No.
   behalf of others similarly situated,
16                                        **DEFENDANTS BIOREFERENCE
              Plaintiff,                  LABORATORIES, INC. AND OPKO
17                                        HEALTH, INC.'S NOTICE OF
       v.                                 REMOVAL**
18
   BIO-REFERENCE LABORATORIES,            [Amador County Superior Court Case
19 INC. a New Jersey corporation; OPKO    No. 21-CV-12353]
   HEALTH, INC., a Delaware Corporation;
20 and Does 1 through 50, inclusive,      [Filed concurrently with Civil Case
                                          Cover Sheet; Corporate Disclosure
21            Defendants.                 Statement; Certificate of Interested
                                          Parties; and Declarations of Eric M.
22                                        Lloyd, Jacqueline DiBartolo, and
                                          Camielle Green]
23

24

25

26

27

28

                          NOTICE OF REMOVAL

76725404v.4

# **TABLE OF CONTENTS**

PLEADINGS, PROCESSES, NOTICES, AND ORDERS ................................................1

TIMELINESS OF REMOVAL ....................................................................................2

BASIS FOR REMOVAL............................................................................................3

I.   JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT
     ("CAFA") ........................................................................................................3

    A.   There is Minimal Diversity for Removal Under CAFA ...............................3

        1.   Plaintiff Is A Citizen of California .......................................................3

        2.   Defendants' Citizenship.......................................................................4

            a.   Defendant OPKO Health, Inc.....................................................4

            b.   Defendant BioReference Laboratories, Inc. ...............................5

        3.   Doe Defendants' Citizenship Must Be Disregarded...........................5

    B.   There Are More Than 100 Putative Class Members.....................................5

    C.   The Amount In Controversy Exceeds $5,000,000 .......................................6

        1.   Unpaid Overtime Wages.......................................................................9

        2.   Meal and Rest Break Claims...............................................................10

        3.   Unpaid Minimum Wages ....................................................................12

        4.   Untimely Final Wages Or "Waiting Time" Penalties.........................13

        5.   Wages Not Timely Paid During Employment.....................................14

        6.   Wage Statement Penalties...................................................................15

        7.   Unreimbursed Business Expenses ......................................................16

        8.   Total Amount Of Alleged Damages and Penalties In
           Controversy.........................................................................................16

        9.   Attorneys' Fees ..................................................................................16

VENUE ...................................................................................................................18

SERVICE OF NOTICE OF REMOVAL ON STATE COURT .................................18

RESERVATION OF RIGHTS .................................................................................18

i

76725404v.4

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abrego v. Dow Chemical Co.,*
   443 F.3d 676 (9th Cir. 2006) ...................................................................5

*Armstrong v. Church of Scientology Int'l,*
   243 F.3d 546 (9th Cir. 2000) ...................................................................4

*Arreola v. Finish Line,*
   No. 14-CV-03339-LHK, 2014 WL 6982571 (N.D. Cal. Dec. 9, 2014)..........................8

*Brady v. Mercedes-Benz USA, Inc.,*
   243 F. Supp. 2d 1004 (N.D. Cal. 2002) ...................................................17

*Campbell v. Vitran Exp., Inc.,*
   471 F. App'x 646 (9th Cir. 2012) .........................................................17

*Caterpillar, Inc. v. Williams,*
   482 U.S. 386 (1987).........................................................................8

*Cicero v. DirecTV, Inc.,*
   No. EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) ...........................17

*Dart Cherokee Basin Operating Co., LLC v. Owens,*
   574 U.S. 81 (2014).....................................................................1, 6, 7

*Franke v. Anderson Merchandisers LLC,*
   No. 17-cv-03241-DSF-AFM, 2017 WL 3224656 (C.D. Cal. July 28,
   2017) .........................................................................................8

*Fristoe v. Reynolds Metals Co.,*
   615 F.2d 1209 (9th Cir. 1980) ...............................................................5

*Hertz Corp. v. Friend,*
   130 S. Ct. 1191 (2010).......................................................................4

*Ibarra v. Manheim Investments, Inc.,*
   775 F.3d 1193 (9th Cir. 2015) ............................................................1, 7

NOTICE OF REMOVAL

*Jones v. Tween Brands, Inc.*,
    No. 14-cv-01631-ODW-PLA, 2014 WL 1607636 (C.D. Cal. Apr. 22,
    2014) ........................................................................................................................9

*Jordan v. Nationstar Mortg. LLC*,
    781 F.3d 1178 (9th Cir. 2015) .................................................................................1

*Kantor v. Wellesley Galleries, Inc.*,
    704 F.2d 1088 (9th Cir. 1983) .................................................................................3

*Lew v. Moss*,
    797 F.2d 747 (9th Cir. 1986) ...................................................................................4

*Longmire v. HMS Host USA, Inc.*,
    No. 12-cv-02203-AJB-DHB, 2012 WL 5928485 (S.D. Cal. Nov. 26,
    2012) ......................................................................................................................16

*Muniz v. Pilot Travel Centers LLC*,
    No. CIV. S-07-0325FCDEFB, 2007 WL 1302504 (E.D. Cal. May 1,
    2007) ..................................................................................................................8, 17

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ...............................................................................17

*In re Quintas Secs. Litig.*,
    148 F. Supp. 2d 967 (N.D. Cal. 2001) ...................................................................17

*Ritenour v. Carrington Mortg. Servs. LLC*,
    228 F. Supp. 3d. 1025 (C.D. Cal. 2017) ..................................................................9

*Soliman v. Philip Morris, Inc.*,
    311 F.3d 966 (9th Cir. 2002) ...................................................................................5

*Soratorio v. Tesoro Ref. and Mktg. Co., LLC*,
    No. CV 17-1554-MWF (RAOx), 2017 WL 1520416 (C.D. Cal. Apr. 26,
    2017) ........................................................................................................................8

*State Farm Mut. Auto Ins. Co. v. Dyer*,
    19 F.3d 514 (10th Cir. 1994) ...................................................................................3

*Torrez v. Freedom Mortg., Corp.*,
    No. 17-cv-00867-JGB-KK, 2017 WL 2713400 (C.D. Cal. June 22, 2017)...................8

NOTICE OF REMOVAL

76725404v.4

*Unutoa v. Interstate Hotels & Resorts, Inc.*,
  No. 2:14–cv–09809–SVW–PJW, 2015 WL 898512 (C.D. Cal. 2015) ......................... 7

*Wheatley v. MasterBrand Cabinets*,
  No. EDCV 18-2127 JGB (SPx), 2019 WL 688209 (C.D. Cal. Feb. 19,
  2019) ............................................................................................................................. 8

*Wren v. RGIS Inventory Specialists*,
  No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011),
  supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May
  13, 2011) ..................................................................................................................... 17

**Federal Statutes**

28 U.S.C. § 84(a) ................................................................................................................. 18

28 U.S.C. § 1332(c) ......................................................................................................... 4, 5

28 U.S.C. § 1332(d) ....................................................................................................... 7, 18

28 U.S.C. § 1332(d)(2) ................................................................................................. 1, 3, 6

28 U.S.C. § 1332(d)(2)(A) ............................................................................................... 3, 5

28 U.S.C. § 1332(d)(5)(B) ............................................................................................ 3, 5, 6

28 U.S.C. § 1332(d)(6) ..................................................................................................... 3, 6

28 U.S.C. § 1367(a) ............................................................................................................. 18

28 U.S.C. § 1391 ................................................................................................................. 18

28 U.S.C. § 1441 ................................................................................................................... 1

28 U.S.C. § 1441(a) ..................................................................................................... 3, 5, 18

28 U.S.C. § 1446 ................................................................................................................... 1

28 U.S.C. § 1446(a) ..................................................................................................... 1, 6, 18

28 U.S.C. § 1446(b) ........................................................................................................... 2, 3

28 U.S.C. § 1446(d) ............................................................................................................. 18

28 U.S.C. § 1453 ................................................................................................................... 1

iv

76725404v.4

**State Statutes**

Cal. Business & Professions Code § 17200, *et seq*. ..................................................2, 9, 12

Cal. Civ. Code § 340(a) .................................................................................................14

Cal. Labor Code § 119 ....................................................................................................2

Cal. Labor Code § 201 ..............................................................................................2, 13

Cal. Labor Code § 202 ..............................................................................................2, 13

Cal. Labor Code § 203 ..............................................................................................2, 13

Cal. Labor Code § 226(a) .........................................................................................2, 15

Cal. Labor Code § 226.7 ..................................................................................................2

Cal. Labor Code § 510 ....................................................................................................2

Cal. Labor Code § 512(a) ................................................................................................2

Cal. Labor Code § 1197 ..................................................................................................2

Cal. Labor Code § 1197.1 ...............................................................................................2

Cal. Labor Code § 1198 ..................................................................................................2

Cal. Labor Code § 2800 ..................................................................................................2

Cal. Labor Code § 2802 ..................................................................................................2

California Code of Civil Procedure § 382 .......................................................................2

California Labor Code § 204 .....................................................................................2, 14

Labor Code § 210............................................................................................................2, 14

Labor Code § 210(b) .....................................................................................................14

Labor Code § 226(e)(1)..................................................................................................15

**Rules**

Federal Rule of Civil Procedure 6(a) ..............................................................................3

Federal Rules of Civil Procedure Rule 23 ......................................................................6

76725404v.4

**Regulations**

Senate Judiciary Committee Report, S. Rep. No. 109-14 (2005), *reprinted in*
2005 U.S.C.C.A.N. 3 ......................................................................................................7

**Other Authorities**

https://www.dir.ca.gov/dlse/faq_minimumwage.htm (last visited Nov. 3,
2021) (minimum wage for employers with 26 or more employees was
$10.50 per hour effective Jan. 1, 2017, $11.00/hour effective Jan. 1,
2018, $12.00/hour effective Jan. 1, 2019, $13.00/hour effective Jan. 1,
2020 and $14.00/hour effective Jan. 1, 2021, which averages to
approximately $12.10 per hour between 2017 and the present)..................................13

NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF DENISE LOPEZ AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants BIOREFERENCE LABORATORIES, INC. ("BioReference") and OPKO HEALTH, INC. ("OPKO") (collectively "Defendants") hereby file this Notice of Removal pursuant to 28 U.S.C. sections 1441 and 1446, asserting original federal jurisdiction under 28 U.S.C. sections 1332(d)(2) and 1453, to effect the removal of the above-captioned action, which was originally commenced in the Superior Court of the State of California in and for the County of Amador, to the United States District Court for the Eastern District of California, and state that the removal is proper for the reasons set forth below.

"Congress intended CAFA jurisdiction to be interpreted expansively." *Ibarra v. Manheim Investments, Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015); *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1183 (9th Cir. 2015) (the "Supreme Court left no doubt" there is no antiremoval presumption for CAFA cases); *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014) ("It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").

## PLEADINGS, PROCESSES, NOTICES, AND ORDERS

On October 5, 2021, Plaintiff Denise Lopez ("Plaintiff") filed a Class Action Complaint in the Superior Court of the State of California, County of Amador, entitled, "*DENISE LOPEZ, individually and on behalf of all others similarly situated, vs. BIO-REFERENCE LABORATORIES, INC., a New Jersey corporation; OPKO HEALTH, INC., a Delaware corporation; and DOES 1 through 50, inclusive*" ("Complaint"), Case No. 21-CV-12353.  A true and correct copy of all pleadings, processes, notices, and orders received by Defendants in this action are attached as **Exhibit A** hereto, as required by 28 U.S.C. section 1446(a) and are incorporated by reference as though fully set forth herein.

76725404v.4

Plaintiff's Complaint alleges nine purported causes of action as follows: (1) Violation of Cal. Labor Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of Cal. Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums); (3) Violation of Cal. Labor Code § 226.7 (Unpaid Rest Period Premiums); (4) Violation of Cal. Labor Code §§ 119, 1197 and 1197.1 (Unpaid Minimum Wages); (5) Violation of Cal. Labor Code §§ 201, 202 and 203 (Final Wages Not Timely Paid); (6) Violation of Labor Code §§ 204 and 210 (Wages Not Timely Paid During Employment); (7) Violation of Cal. Labor Code § 226(a) (Failure to Provide Accurate Wage Statements); (8) Violation of Cal. Labor Code §§ 2800 and 2802 (Failure to Reimburse Necessary Business Expenses); and (9) Violation of Cal. Business & Professions Code § 17200, *et seq*.

The Complaint seeks to certify a class of "[a]ll current and former non-exempt employees of any of the Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that the notice of the certified class action is provided to the class." (Ex. A, Compl. ¶ 13; *see also id*. ¶ 2 (Plaintiff purports to represent "similarly situated current and former employees of Defendants . . . . pursuant to California Code of Civil Procedure section 382.").)

On November 5, 2021, Defendants filed their Answer to the Complaint in the Superior Court of California, County of Amador. A true and correct copy of the Answer is attached hereto as **Exhibit B**. Defendants have not filed any other pleadings or papers in this action prior to this Notice of Removal.

The exhibits listed above constitute all prior pleadings, process, and orders in Defendants' possession that were filed with the court in this matter.

## TIMELINESS OF REMOVAL

Without conceding that service of the Summons and Complaint was effective for purposes of 28 U.S.C. section 1446(b), this Notice of Removal is timely because it is being filed within thirty (30) days of Defendants' receipt of the Summons and Complaint on October 8, 2021, and within one (1) year of the commencement of this action.

NOTICE OF REMOVAL

76725404v.4

(**Exhibit C**, Decl. of Eric Lloyd in Support of Defendants' Notice of Removal ("Lloyd Decl."), ¶ 3.) Thus, removal is timely pursuant to 28 U.S.C. section 1446(b) and Federal Rule of Civil Procedure 6(a).

**BASIS FOR REMOVAL**

## I.   JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")

This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. section 1332(d)(2).  As set forth below, this action is properly removable, pursuant to 28 U.S.C. section 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and the action is a class action in which at least one class member is a citizen of a state different from that of Defendants.  *See* 28 U.S.C. §§ 1332(d)(2) & (d)(6).  Furthermore, the number of putative class members is greater than 100.  28 U.S.C. § 1332(d)(5)(B); (**Exhibit D**, Decl. of Jacqueline DiBartolo in Support of Defendants' Notice of Removal ("DiBartolo Decl."), ¶ 5.).

### A.   There is Minimal Diversity for Removal Under CAFA

CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).  In the instant case, at least one member of the putative class and Defendants are diverse from one another because at least one class member is a citizen of California and Defendants are citizens of Delaware, Florida, and New Jersey.[1]

#### 1.   Plaintiff Is A Citizen of California

For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is *prima facie* evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).  Citizenship is determined by the individual's domicile

---

[1] Defendants are neither states, state officials, or any other governmental entities.

3
NOTICE OF REMOVAL

76725404v.4

at the time that the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

Plaintiff Lopez was and continues to be domiciled in California, including while she worked for Defendant BioReference Laboratories, Inc. in California.  (*See* Ex. A, Compl. ¶¶ 6 and 19.)  Plaintiff specifically alleges that she "is an individual residing in the County of Amador, State of California."  (Ex. A, Compl. ¶ 6.)

Additionally, Plaintiff brought this lawsuit against Defendants in Amador County Superior Court.  Therefore, Plaintiff was at all relevant times, and still is, a citizen and resident of the State of California.

### 2.    Defendants' Citizenship

Pursuant to 28 U.S.C. §1332(c), a "corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  The Supreme Court held that the "principal place of business" of a corporation is best interpreted as a corporation's "nerve center," which is where a corporation's officers direct, control and coordinate the corporations' activities.  *Hertz Corp. v. Friend,* 130 S. Ct. 1191, 1192–93 (2010).  Thus, the appropriate test to determine a corporation's principal place of business is what is commonly referred to as the "nerve center" test.  *See id.*

### a.    Defendant OPKO Health, Inc.

Defendant OPKO Health, Inc. is a corporation.  (**Exhibit E**, Decl. of Camielle Green in Support of Defendants' Notice of Removal ("Green Decl."), ¶ 3.).  OPKO is, and ever since this action commenced, organized under the laws of the State of Delaware. (*Id.* at ¶ 3.)  OPKO's corporate headquarters and its executive offices are located in Miami, Florida. (*Id.* at ¶ 3.)  It is there that OPKO's high level officers direct, control, and coordinate OPKO's activities.  (*Id.* at ¶ 3.) Under the "nerve center" test, OPKO's principal place of business is Florida. (*Id.* at ¶ 3.)  Thus, OPKO is a citizen of Delaware and Florida.  28 U.S.C. §1332(c).

/ / /

4

### b.     Defendant BioReference Laboratories, Inc.

Defendant BioReference Laboratories, Inc. is a corporation and a wholly owned subsidiary of OPKO.  (Green Decl. ¶ 4.)  BioReference is, and ever since this action commenced,  organized under the laws of the State of New Jersey.  (*Id.* at ¶ 4.) BioReference's corporate headquarters and its executive offices are located in Elmwood Park, New Jersey.  (*Id.* at ¶ 4.)  It is there that BioReference's high level officers direct, control, and coordinate BioReference's activities.  (*Id.* at ¶ 4.)  Under the "nerve center" test, BioReference's principal place of business is Elmwood Park, New Jersey.  (*Id.* at ¶ 4.)  Thus, BioReference is a citizen of New Jersey.  28 U.S.C. §1332(c).

Accordingly, Defendants are not currently citizens of California and were not citizens of California at the time Plaintiff filed the Complaint.  Thus, minimal diversity exists.  28 U.S.C. § 1332(d)(2)(A).

### 3.     Doe Defendants' Citizenship Must Be Disregarded

The presence of Doe Defendants in this case has no bearing on diversity of citizenship for removal.  28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002).  Thus, the existence of Doe Defendants 1 through 50 does not deprive this Court of jurisdiction. *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

### B.     <u>There Are More Than 100 Putative Class Members</u>

CAFA requires that the aggregate number of members of all proposed classes in the complaint be at least 100.  *See* 28 U.S.C. § 1332(d)(5)(B).  The purported class alleged in the Complaint includes "[a]ll current and former non-exempt employees of any of the Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that the notice of the certified class action is provided to the class."  (Ex. A, Compl. ¶ 13.).

5

76725404v.4

From October 5, 2017 (four years prior to the filing of Plaintiff's Complaint) through October 26, 2021, BioReference alone employed 423 non-exempt employees in California, and thus these former and current employees fall within Plaintiff's alleged class. (DiBartolo Decl. ¶ 5.) Accordingly, there are more than 100 putative class members pursuant to 28 U.S.C. § 1332(d)(5)(B).

### C.     The Amount In Controversy Exceeds $5,000,000

This Court has jurisdiction under CAFA, which authorizes the removal of class actions in which, among other factors mentioned, requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).

The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). A defendant's "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC,* 574 U.S. at 89 (evidence is not required to be filed with the notice).

While Defendants deny any liability as to Plaintiff's claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000.  Defendants furthermore deny that class treatment is appropriate, that Plaintiff has standing to represent any proposed class, and that the proposed class would meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. Defendants expressly reserve the right to challenge Plaintiff's claims, adequacy and standing to represent any proposed class, class definitions, and allegations of damages in all respects. Defendants fully reserve all rights and defenses. **For purposes of this removal only**, **all calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission, the truth of the facts alleged and assuming liability is established.**

Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum of $5,000,000.  28 U.S.C. § 1332(d)(6).  In addition, Congress intended for federal jurisdiction to be

76725404v.4

appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." *See* Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.  The Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  *Id*. at 42-43. ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

To establish that the amount in controversy exceeds the jurisdictional amount, the defendant must make a plausible claim that the amount in controversy exceeds that amount.  *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89. As Plaintiff here has not alleged any particular damages, reasonable estimates of the alleged amount in controversy are appropriate.  *See Ibarra*, 775 F.3d at 1198; *Unutoa v. Interstate Hotels & Resorts, Inc*., No. 2:14–cv–09809–SVW–PJW, 2015 WL 898512, at *2-3 (C.D. Cal. 2015) ("Removing defendants will inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation.").

Courts have found that estimates premised on 100 percent violation rates are reasonable where the plaintiff does not specifically allege otherwise:

As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

*Muniz v. Pilot Travel Centers LLC,* No. CIV. S-07-0325FCDEFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)); *see also Wheatley v. MasterBrand Cabinets,* No. EDCV 18-2127 JGB (SPx), 2019 WL 688209, at *5 & n.7 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations . . . Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform . . . policies were applied to all putative class members reasonable."); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC,* No. CV 17-1554-MWF (RAOx), 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.) *Arreola v. Finish Line,* No. 14-CV-03339-LHK, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint.").

Other courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Franke v. Anderson Merchandisers LLC,* No. 17-cv-03241-DSF-AFM, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate."); *Torrez v. Freedom Mortg., Corp.,* No. 17-cv-00867-JGB-KK, 2017 WL 2713400, at *3–5 (C.D. Cal. June 22, 2017) (where complaint alleged "[the defendant] engaged in a pattern and practice of wage

8

abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Ritenour v. Carrington Mortg. Servs. LLC,* 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate—especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.,* No. 14-cv-01631-ODW-PLA, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100% violation rate for waiting-time penalties because the complaint did not limit the frequency of violations).

### 1.    Unpaid Overtime Wages

Plaintiff's first claim seeks alleged unpaid overtime wages.  Plaintiff alleges that she and the putative class members were required "to work off the clock without compensation, thereby failing to [be paid] for all hours worked, including. . . . overtime wages." (Ex. A, Compl. ¶ 22.)  Specifically, Plaintiff alleges that "Plaintiff and the other Class Members regularly worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week."  (*Id.* at ¶ 47.)  She further contends that "Defendants intentionally and willfully failed to pay overtime wages owed to Plaintiff and the other Class Members."  (*Id.* at ¶ 48.)

Here, BioReference employed 423 non-exempt employees in California during the relevant time period between October 5, 2017 and October 26, 2021.[2]  (DiBartolo Decl., ¶ 5.) Approximately 302 of BioReference's non-exempt full-time employees in California between October 5, 2017 and October 26, 2021 were, as of the time the data was pulled, scheduled to work approximately forty (40) hours per week during their most recent workweek.  (*Id.* at ¶ 6.)  These employees worked approximately 24,685 workweeks between October 5, 2017 and October 26, 2021. (*Id.*)  The average hourly

---

[2] Plaintiff's overtime claim is subject to a three year statute of limitations, which is extended to four years by virtue of her claim for violation of Business and Professions Code § 17200 *et seq.*

9

76725404v.4

wage for BioReference's non-exempt employees in California between October 5, 2017 and October 26, 2021 during their employment is approximately $22.99. (*Id.* at ¶ 7.)

In light of the allegations in the Complaint and Defendants' internal investigation and analysis, Defendants have calculated the amount in controversy with respect to Plaintiff's class claim for unpaid overtime concerning non-exempt California employees who were expected to work forty (40) or more hours per week as approximately **$851,385.65.** This figure was calculated assuming a conservative estimate of one of unpaid overtime hour per week for each of the 302 putative class members expected to work 40 hours per week [24,685 workweeks x overtime rate (time and a half) of $34.49 x 1 hour per week)].  Notably, this calculation does not include the approximately 121 non-exempt California employees who were scheduled to work fewer than forty (40) hours per week as of the time the data during their most recent workweek, even though Plaintiff alleges *all* putative class members were subjected to overtime violations.  (DiBartolo Decl.*,* ¶ 9; *see also* Ex. A, Compl. ¶¶ 22, 47-48.)

### 2.      Meal and Rest Break Claims

Plaintiff's second and third claims are for failure to provide meal periods and failure to authorize and permit rest periods.

With respect to her meal period claim, Plaintiff alleges she "and the other Class Members who were scheduled to work for a period of time longer than six (6) hours, and who did not waive their legally-mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes." (Ex. A, Compl. ¶ 56.)  She further alleges that Defendants "implemented policies and practices which failed to provide Plaintiff and the Class with timely and duty-free meal periods," "acted in a manner that would fail to relieve Plaintiff and the Class of all duties during meal periods, failed to relinquish control over Plaintiff and the Class during their meal periods, failed to permit Plaintiff and the Class a reasonable opportunity to take their meal periods, and impeded or discouraged Plaintiff and the Class from taking thirty (30) minute uninterrupted meal breaks no later than the

10

76725404v.4

1   end of their fifth hour of work and/or from taking a second . . . .meal break no later than
2   their tenth hour of work for shifts lasting more than ten (10) hours." (*Id.* at ¶ 23.)
3   Plaintiff also alleges that "[d]uring the relevant time period, Defendants intentionally and
4   willfully required Plaintiff and the other Class Members to miss their meal periods and to
5   take meal periods that were late, shortened, or interrupted, and failed to compensate
6   Plaintiff and the other Class Members the full meal period premium for missed,
7   shortened, late, or interrupted meal periods." (Ex. A, Compl. ¶ 58.)

8       With respect to her rest period claim, Plaintiff alleges that "Defendants required
9   Plaintiff and other Class Members to work four (4) or more hours without authorizing or
10  permitting a ten (10) minute rest period each four (4) hour period work." (Ex. A, Compl.
11  ¶ 65.) She further alleges that Defendants "implemented policies and practices which
12  prohibited Plaintiff and the Class from taking timely and duty-free rest periods" and
13  "refused to provide, authorize and permit Plaintiff and the Class to take full,
14  uninterrupted, off-duty rest periods for every shift lasting three and one-half (3.5) to six
15  (6) hours and/or two full, uninterrupted, off-duty rest periods for every shift lasting six
16  (6) to ten (10) hours." (*Id.* at ( 26.) Plaintiff also alleges "Defendants willfully required
17  Plaintiff and the other Class Members to work during rest periods, failed to allow
18  Plaintiff and the other Class Member[sic] to take any rest period and/or failed to
19  authorize and permit Plaintiff and the other Class Members to take uninterrupted, duty-
20  free rest breaks." (Ex. A, Compl. ¶ 67.)

21      Plaintiff alleges that she and putative class members are entitled to recover one
22  hour of premium pay, paid at their regular rate of compensation, for each workday during
23  which a meal period violation occurred, in addition to one hour of premium pay, also at
24  their regular rate of compensation, for each workday during which a rest period violation
25  occurred. (Ex. A, Compl. ¶¶ 61, 70.)

26      Here, the approximately 423 non-exempt California employees employed by
27  BioReference between October 5, 2017 and October 26, 2021 worked approximately

28

NOTICE OF REMOVAL

32,841 workweeks during that time period.[3] (DiBartolo Decl.,¶ 8.) In light of these allegations and Defendants' investigation and analysis, Defendants have calculated the amount in controversy with respect to Plaintiff's class claims for meal and rest period violations as approximately **$3,020,058.36**.  This figure presumes four premium payments, at the average hourly wage of $22.99, for each of the 423 putative class members per workweek, reflecting an estimated two meal period violations and two rest period violations per putative class member per workweek.  [($22.99/hour x 32,841 workweeks x 2 meal period premiums) + ($22.99/hour x 32,841 workweeks x 2 rest period premiums).]  (*See id.* at ¶¶ 5, 7, 8.)

### 3.   Unpaid Minimum Wages

Plaintiff's fourth claim is for failure to pay minimum wages to Plaintiff\ and other putative class members.  Plaintiff alleges that Defendants required "Plaintiff and the Class to work off the clock without compensation, thereby failing to pay them for all hours worked, including minimum…wages."  (Ex. A, Compl., ¶ 22.)  She further alleges that "Plaintiff and the other Class Members are entitled to recover the unpaid balance of their minimum wage compensation as well as interest, costs, and attorneys' fees, and liquidated damages in an amount equal to the wages unlawfully paid and interest thereon. (*Id.* at ¶ 74.)

Approximately 121 of BioReference's non-exempt employees in California between October 5, 2017 and October 26, 2021 were, as of the time the data was pulled, scheduled to work fewer than approximately forty (40) hours per week during their most recent workweek.[4]  (DiBartolo Decl., ¶ 9.)  These 121 employees worked approximately 8,155 workweeks between October 5, 2017 and October 26, 2021. (*Id.*) Further, the

---

[3] Plaintiff's meal and rest period claims are subject to a three year statute of limitations, which is extended to four years by virtue of her claim for violation of Business and Professions Code § 17200 *et seq.*

[4] Plaintiff's minimum wage claim is subject to a three year statute of limitations, which is extended to four years by virtue of her claim for violation of Business and Professions Code § 17200 *et seq.*

76725404v.4

average California minimum wage between October 5, 2017 and October 26, 2021 was $12.10.[5]

In light of the allegations in the Complaint and Defendants' investigation and analysis, Defendants have calculated the amount in controversy with respect to Plaintiff's class claim for unpaid minimum wages, only as to the 121 non-exempt California employees scheduled to work fewer than 40 hours per week, as approximately **$197,351.00**.  This figure presumes just one hour of off the clock work per putative class member per workweek, paid at the average minimum wage of $12.10 per hour, plus an equivalent amount representing liquidated damages [(1 hour/workweek at $12.10 for employees scheduled fewer than 40 hours x 8,155 workweeks) x 2 to include liquidated damages].

### 4.      Untimely Final Wages Or "Waiting Time" Penalties

Plaintiff's fifth cause of action alleges that "Defendants intentionally and willfully failed to pay Plaintiff and other Class members who are no longer employed by Defendants all of their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ."  (Ex. A, Compl. ¶ 78.)  Moreover, Plaintiff alleges that, under California Labor Code section 203, "if an employer willfully fails to pay wages owed, in accordance with sections 201 and 202, then the wages of the employee shall continue as a penalty wage from the due date, and at the same rate until paid or until an action is commenced; but the wages shall not continue for more than thirty (30) days." (*Id.* at ¶ 80.)

During the applicable three-year limitations period (October 5, 2018 to October 26, 2021), the employment of approximately 210 non-exempt California employees of

---

[5] *See* California Department of Industrial Relations, "Minimum Wage," https://www.dir.ca.gov/dlse/faq_minimumwage.htm (last visited Nov. 3, 2021) (minimum wage for employers with 26 or more employees was $10.50 per hour effective Jan. 1, 2017, $11.00/hour effective Jan. 1, 2018, $12.00/hour effective Jan. 1, 2019, $13.00/hour effective Jan. 1, 2020 and $14.00/hour effective Jan. 1, 2021, which averages to approximately $12.10 per hour between 2017 and the present).

13

76725404v.4

BioReference terminated.  (DiBartolo Decl., ¶ 10.)  On average, BioReference's non-exempt employees in California between October 5, 2017 and October 26, 2021 were, as of the time the data was pulled, scheduled to work an approximate average of 35 hours per week, based on their most recent workweeks.  (*Id.* ¶ 11.)

Assuming, for purposes of these calculations, that these 210 employees worked seven hours a day (35 hours per week/5 workdays per week), and assuming each employee recovers 30 days' pay (paid at the putative class's average hourly wage of $22.99 per hour) as a waiting time penalty, Defendants have calculated the amount in controversy with respect to Plaintiff's waiting time penalties claim as approximately **$1,013,859.00** [(30 day maximum recovery x (7 hours per day x $22.99/hour)) x 210].

### 5.    Wages Not Timely Paid During Employment

Plaintiff's sixth cause of action alleges Defendants failed to timely pay wages during employment pursuant to California Labor Code section 204.  Labor Code section 204 provides, in pertinent part, that  "Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month."  Plaintiff alleges that "Plaintiff and other Class Members are entitled to recover all available remedies for Defendant's violations of California Labor Code section 204, including statutory penalties pursuant to Labor Code section 210(b)." (Ex. A, Compl. ¶ 87.)  Per Labor Code section 210, the penalty for any initial violation is $100 for each failure to pay each employee for any initial violation.

During the one year period prior to the filing of Plaintiff's Complaint,[6] BioReference employed approximately 249 non-exempt employees in California. (DiBartolo Decl., ¶ 12.) BioReference has, since at least October 5, 2017, paid its non-exempt employees in California on a bimonthly basis (i.e. 26 pay periods per year). (*Id.*)

---

[6] Causes of action for penalties are subject to a one year statute of limitations.  Cal. Civ. Code § 340(a).

NOTICE OF REMOVAL

Therefore, the approximately 249 non-exempt California employees employed by BioReference between October 5, 2020 and the present worked approximately 4,272 bimonthly pay periods. (*Id.*)  Accordingly, if each such employee is allotted a $100 penalty for each pay period between October 5, 2020 and the present, the amount in controversy for Plaintiff's claim is **$427,200.00** [4,272 pay periods x $100 penalty per period].

### 6.   Wage Statement Penalties

Plaintiff's seventh cause of action alleges that, in violation of Labor Code section 226(a), "Defendants have intentionally and willfully failed to provide Plaintiff and the Class with complete and accurate wage statements" and "[t]he deficiencies include, but are not limited to the failure [sic] list the total number of hours worked, the actual gross wages earned, and the correct rates of pay." (Ex. A, Compl. ¶ 90.)

Labor Code section 226(e)(1) provides that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000) . . . ."

During the one year period prior to the filing of Plaintiff's Complaint, BioReference employed approximately 249 non-exempt employees in California. (DiBartolo Decl., ¶ 12.)  BioReference has, since at least October 5, 2017, paid its non-exempt employees in California on a bimonthly basis (i.e. 26 pay periods per year) and issued wage statements to them each pay period during the same time period. (*Id.*) Therefore, the approximately 249 non-exempt California employees employed by BioReference between October 5, 2020 and the present worked approximately 4,272 bimonthly pay periods.  (*Id.*)

Accordingly, if each such employee is allotted a $50 penalty for the initial pay period between October 5, 2020 and the present in which a purportedly inaccurate wage

statement was issued, and a $100 penalty for each subsequent pay period, the amount in controversy for Plaintiff's claim is **$414,750.00** [(249 pay periods x $50 penalty per period) + (4,023 pay periods x $100 penalty per period)].

### 7.   Unreimbursed Business Expenses

Plaintiff's eighth cause of action alleges that "Plaintiff and the Class incurred necessary business-related expenses and costs that were not fully reimbursed by Defendants. Defendants' failure to reimburse for all necessary business-related expenses and costs included their failure to reimburse Plaintiff and the Class for costs incurred as a result of, including but not limited to, simple negligence." (Ex. A, Compl. ¶ 97.)  Per the Complaint, these items include "work scrubs, non-slip shoes, stop-watches/timers to monitor and complete work, and other tools for the performance of the job." (*Id.* at ¶ 22.)

In light of the allegations in the Complaint and Defendants' internal investigation and analysis, Defendants have calculated the amount in controversy with respect to Plaintiff's class claim for unpaid expenses as approximately **$117,469.00**. This assumes, conservatively, that each of BioReference's 423 non-exempt employees in California was not reimbursed for $186.00 in purchases consisting of the following items each year between October 5, 2017 and October 26, 2021: 5 sets of work scrubs (valued at approximately $26 apiece), 1 set of non-slip shoes (valued at approximately $36), and 1 stop-watch/timer per year (valued at approximately $20) [(32,841 workweeks/52 weeks per year) * $186.00].  (Lloyd Decl., ¶¶ 4-7; DiBartolo Decl., ¶ 5.)

### 8.   Total Amount Of Alleged Damages and Penalties In Controversy

On the basis of the allegations in Plaintiff's Complaint, a reasonable estimate of the amount in controversy is approximately **$6,042,073.01**, exclusive of attorneys' fees.

### 9.   Attorneys' Fees

Plaintiff also seeks to recover her attorneys' fees.  (Ex. A, Compl., Prayer for Relief ¶¶ 8, 15, 27, 45, and 50.)  A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, No. 12-cv-02203-AJB-DHB, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts

16

76725404v.4

may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002)); *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325FCDEFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007)  (attorneys' fees appropriately included in determining amount in controversy).

In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may award more than this benchmark when warranted.  *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees are appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-1257 (9th Cir. 2000); <u>*Wren v. RGIS Inventory Specialists*</u>, No. C-06-05778 JCS, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011), <u>supplemented,</u> No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (finding support for adjusting the 25% presumptive benchmark upward and holding that plaintiff's request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25% of the fund).

Thus, even under the conservative benchmark of 25 percent of the total potential recovery, Plaintiff's potential attorneys' fees based on the amount in controversy established above could be as high as approximately **$1,510,518.25** [$6,042,073.01 x 0.25)]. Accordingly, accounting for Plaintiff's potential attorneys' fees, the amount in controversy is **$7,552,591.26** [$6,042,073.01 in damages and penalties +  $1,510,518.25 in attorneys' fees].

Since at least one member of the putative class and Defendants are citizens of different states, there are more than 100 putative class members, and the amount in controversy exceeds $5,000,000, removal based on CAFA jurisdiction is proper.

To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## VENUE

As discussed above, Plaintiff is a resident of California. Plaintiff originally brought this action in the Superior Court of the State of California, County of Amador, which is located within the Eastern District of California. Therefore, venue lies in the United States District Court for the Eastern District of California, Sacramento Office pursuant to 28 U.S.C. §§ 84(a), 1391, 1441(a) and 1446(a).

## SERVICE OF NOTICE OF REMOVAL ON STATE COURT

Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and her counsel, and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of Amador.

## RESERVATION OF RIGHTS

By filing this Notice of Removal, Defendants do not concede nor waive any defense to this action, including, but not limited to, that Plaintiff lacks standing to bring this action or the Court lacks jurisdiction or some members of the putative class. Defendants reserve all defenses.

///
///
///
///
///

18

76725404v.4

1

2

3

WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the State of California, County of Amador, to the United States District Court for the Eastern District of California.

4

DATED: November 8, 2021

Respectfully submitted,

5

SEYFARTH SHAW LLP

6

7

By: /s/ Eric M. Lloyd

8

Eric M. Lloyd
Michelle L. DuCharme
Bradley D. Doucette

9

10

Attorneys for Defendants
BIOREFERENCE LABORATORIES, INC.
and OPKO HEALTH, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

76725404v.4