UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Denise Lopez, | No. 2:21-cv-02063-KJM-DB |
| Plaintiff, | ORDER |
| v. | |
| Bio-Reference Laboratories, Inc., et al., | |
| Defendants. | |

    Plaintiff Denise Lopez brought this putative wage-and-hour class action against her employers, defendants Bio-Reference Laboratories, Inc. and Opko Health, Inc., in Amador County Superior Court. Defendants timely removed to this court, invoking the court's jurisdiction under the Class Action Fairness Act (CAFA). Plaintiff has moved to remand, arguing defendants failed to establish the amount in controversy exceeds $5 million. As explained below, the court finds defendants have established it is more likely than not the amount in controversy exceeds $5 million; the court therefore **denies** plaintiff's motion.

**I.     BACKGROUND**

    Plaintiff has worked as a phlebotomist for defendants since in or about 2016. Compl. ¶ 19, Not. Removal Ex. A, ECF No. 1-1. Plaintiff sued defendants in 2021, alleging unfair business practices and eight violations of the California Labor Code: (1) failure to pay overtime wages in violation of sections 510 and 1198; (2) failure to provide meal period premiums in

1

violation of sections 226.7 and 512(a); (3) failure to provide rest break premiums in violation of section 226.7; (4) failure to pay minimum wage in violation of sections 1194, 1197, and 1197.1; (5) failure to timely pay wages upon termination in violation of sections 201 to 203; (6) failure to timely pay wages during employment in violation of sections 204 and 210; (7) failure to provide complete itemized wage statements in violation of section 226(a); and (8) failure to reimburse business expenses in violation of sections 2800 and 2802. *See generally* Compl.  Plaintiff seeks to represent a class comprising current and former non-exempt California employees who worked for defendants within the last four years. *Id.* ¶ 13.

As noted, defendants timely removed to this court, invoking this court's jurisdiction under CAFA. *See generally* Not. Removal, ECF No. 1.  Plaintiff moved to remand, arguing this court lacks subject matter jurisdiction because defendants have not shown that more than $5 million dollars is in controversy. *See generally* Mot. Remand, ECF No. 5.  The court received full briefing and submitted the matter without oral argument. *See* Opp'n, ECF No. 6; Reply, ECF No. 8; Min. Order, ECF No. 7.

## II.     DISCUSSION

Under the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant . . . to the district court of the United States for the district . . . where such action is pending." 28 U.S.C. § 1441(a).  Under CAFA, the federal courts have original jurisdiction over class actions in which the parties are minimally diverse, the proposed class has at least one hundred members, and the aggregated amount in controversy exceeds $5 million dollars. *See* 28 U.S.C. § 1332(d)(2), (5).  The parties do not dispute that they are diverse or that the proposed class has at least one hundred members; the only issue before the court is whether the amount in controversy exceeds $5 million.

Because plaintiff's complaint does not quantify damages, the defendants must show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 849 (9th Cir. 2020); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  In making this showing, a

removing defendant "must be able to rely 'on a chain of reasoning that includes assumptions.'" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)); *see also id.* ("[A] CAFA defendant's amount in controversy assumptions in support of removal will always be just that: assumptions."). These assumptions must reflect more than "mere speculation and conjecture," *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015), and they "need some reasonable ground underlying them," *see id.* at 1199, but they "need not be proven," *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (overturning remand order where district court held lack of evidence precluded use of assumed violation rates). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at 925.

The core dispute here is whether defendants have sufficiently supported the assumptions undergirding their amount-in-controversy calculation. Defendants calculate the amount in controversy in three steps. First, defendant BioReference's Senior Director of Human Resources Operations and Payroll, Jacqueline DiBartolo, attests to the size of the putative class and class members' average hourly wage, among other relevant metrics. *See generally* DiBartolo Suppl. Decl., ECF No. 6-1. To generate these numbers, Ms. DiBartolo reviewed personnel files, payroll data, and time records. *See id.* ¶¶ 7–14. Second, defendants look to key language in plaintiff's complaint and cases analyzing analogous language to determine an appropriate violation rate to use in estimating the amount in controversy. *See, e.g.*, Opp'n at 11 (collecting cases that analyze allegations similar to plaintiff's allegation of a "policy and practice" of denying meal and rest breaks and arguing these cases illuminate appropriate violation rate here). Third, combining Ms. DiBartolo's data and defendants' inferred violation rates, defendants calculate the amount in controversy for each of plaintiff's claims. Plaintiff takes issue with the assumptions defendants draw from Ms. DiBartolo's data and with defendants' assumed violation rates. For several

/////
/////
/////
/////

3

1  claims, plaintiff provides alternative, allegedly more reasonable violation rates. *See, e.g.*, Mot.
2  Remand at 16–17. The following chart summarizes the parties' positions on each claim:
3

| Claim | Plaintiff's Calculation | Defendants' Lowest Calculation | Defendants' Alternative Calculation | Defendants' Highest Calculation |
|---|---|---|---|---|
| Unpaid Overtime | **$424,433.94** [24,612 workweeks x .5 hours per week x 1.5 overtime rate of $34.49] | **$848,867.88** [24,612 workweeks x 1 hour per week x 1.5 overtime rate of $34.49] | **$1,130,133.83** [32,767 workweeks x 1 hour per week x 1.5 overtime rate of $34.49] | **$1,130,133.83** [no change] |
| Missed Meal and Rest Breaks | **$1,506,626.66** [32,767 workweeks x 2 missed breaks per week x $22.99 per hour] | **$1,506,626.66** [32,767 workweeks x 2 missed breaks per week x $22.99 per hour] | **$3,013,253.32** [32,767 workweeks x 4 missed breaks per week x $22.99 per hour] | **$7,533,133.30** [32,767 workweeks x 10 missed breaks per week x $22.99 per hour] |
| Unpaid Minimum Wages | **$98,663.40** [8,154 workweeks x .5 hours per week x $12.10 per hour x 2 for liquidated damages] | **$197,326.80** [8,154 workweeks x 1 hour per week x $12.10 per hour x 2 for liquidated damages] | **$792,961.40** [32,767 workweeks x 1 hour per week x $12.10 per hour x 2 for liquidated damages] | **$792,961.40** [no change] |
| Waiting Time Penalties | NA | **$795,637.92** [206 terminated employees x 30-day maximum recovery x 5.6 hours per day x $22.99 per hour] | **$994,547.40** [206 terminated employees x 30-day maximum recovery x 7 hours per day x $22.99 per hour] | **$994,547.40** [no change] |
| Wages Not Timely Paid | NA | **$427,000.00** [4,270 pay periods x $100 penalty per period] | **$427,000.00** [no change] | **$427,000.00** [no change] |
| Wage Statement Penalties | NA | **$414,650.00** [(247 employees x $50 penalty per initial violation) + (4,023 additional pay periods x $100 penalty per subsequent violation)] | **$414,650.00** [no change] | **$414,650.00** [no change] |
| Unreimbursed Business Expenses | NA | **$117,205.04** [32,767 workweeks/52 weeks per year x $186.00 annual expenses] | **$117,205.04** [no change] | **$117,205.04** [no change] |
| **Total** | **Incomplete** | **$5,384,142.88** | **$8,612,188.74** | **$14,262,038.71** |

1	In determining the appropriate calculation, the court is guided by the Ninth Circuit's

2	recent decision in *Jauregui*, in which the court explained how to assess assumptions underlying

3	amount-in-controversy calculations:

> Where a defendant's assumption is unreasonable on its face without
> comparison to a better alternative, a district court may be justified in
> simply rejecting that assumption and concluding that the defendant
> failed to meet its burden. But often . . . the reason a defendant's
> assumption is rejected is because a different, better assumption is
> identified. Where that's the case, the district court should consider
> the claim under the better assumption—not just zero-out the claim.

28 F.4th at 996. Following this directive, the court eliminates assumptions that are self-evidently unreasonable or baseless. *Id.*; *see also Ibarra*, 775 F.3d at 1199 ("[A]ssumptions cannot be pulled from thin air but need some reasonable ground underlying them."). Where alternative assumptions haves been offered, the court adopts the best reasonable alternative. *Jauregui*, 28 F.4th at 996. The court sets forth its application of this approach below, by claim.

### A.    Meal & Rest Breaks

Defendants initially determined that missed meal and rest breaks put $3,013,253.32 in controversy.[1] *See* Not. Removal at 17–19. Defendants reached this figure by assuming class members missed an average of two required meal breaks and two required rest breaks per workweek. *See id.* at 19. In support of this assumption, defendants point to language in plaintiff's complaint alleging defendants "implemented policies and practices" of denying class members their meal and rest breaks. *See id.* at 17–18 (citing Compl. ¶ 26). Plaintiff argues this assumption is unreasonable, highlighting the absence of any evidence or explicit, specific allegations related to the frequency with which meal and rest breaks were missed. *See* Mot. Remand at 14–17; Reply at 8–10. Plaintiff contends it would be "more reasonable" to assume

---

[1] In defendants' notice of removal, defendants originally determined these claims put $3,020,058.36 in controversy. But, as defendant later explains, "The data previously analyzed inadvertently contained an exempt employee, two employees who were hired but never performed any work, and one employee who commenced a lengthy leave of absence before the class period commenced and whose employment terminated during the class period before returning to work." Opp'n at 10 n.2 (citing DiBartolo Decl. ¶¶ 5–7). Defendants' modified calculation is $3,013,253.32.

5

1 one meal break and one rest break missed per workweek.  *See* Mot. Remand at 16; Davis Decl.
2 ¶ 7, ECF No. 5-1.  In their opposition, defendants offer three violation rates but maintain that
3 their original assumption is better than plaintiff's proposed alternative.  *See* Opp'n at 10–11.

4      As an initial matter, the court finds defendants' original assumption—that class members
5 missed two meal breaks and two rest breaks per week—is not facially unreasonable.  Courts
6 routinely approve higher violation rates based on allegations of "policies and practices" denying
7 meal and rest breaks to class members.  *See, e.g.*, *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147,
8 1151 (S.D. Cal. 2018) (finding it reasonable to assume putative class members missed three meal
9 periods and three rest periods per workweek where the complaint "offered no guidance as to the
10 frequency of the alleged violations, only that Defendant had 'a policy and practice' of meal and
11 rest period violations"); *Sanchez v. Abbott Labs.*, No. 20-cv-01436, 2021 WL 2679057, at *4–5
12 (E.D. Cal. June 30, 2021) (finding it reasonable to assume putative class members missed three
13 meal periods and two rest periods per week based on the complaint's allegation of a "pattern and
14 practice" of denying such breaks); *Oda v. Gucci Am., Inc.*, No. 14-cv-07469, 2015 WL 93335, at
15 *4–5 (C.D. Cal. Jan. 7, 2015) (finding it reasonable to assume putative class members missed 2.5
16 meal periods and 2.5 rest periods per week based on the complaint's allegations that class
17 members "sometimes" did not receive all meal periods and defendant-employer "maintained a
18 policy or practice" of not compensating employees for missed breaks).  The court thus considers
19 whether plaintiff has proposed a better alternative.

20      Plaintiff does not propose a better alternative.  Plaintiff proposes the court assume class
21 members missed only one meal break and one rest break per week, but the cases she cites do not
22 lend sufficient support to her position.  First, several of plaintiff's cases do not analyze language
23 similar to the "policy and practice" language at issue here.  *See* Mot. Remand at 14–15 (citing
24 *Armstrong v. Ruan Transp. Corp.*, No. 16-cv-1143, 2016 WL 6267931, at *3 (C.D. Cal. Oct. 25,
25 2016); *Ray v. Nordstrom, Inc.*, No. 11-cv-7277, 2011 WL 6148668, at *3 (C.D. Cal. Dec. 9,
26 2011); *Ruby v. State Farm Gen. Ins. Co.*, No. 10-cv-2252, 2010 WL 3069333, at *4–5 (N.D. Cal.
27 Aug. 4, 2010)).  Because these cases do not analyze the relevant language in plaintiff's complaint,
28 or analogous language, they do not demonstrate plaintiff's assumption is superior to defendants'.

6

Second, several of plaintiff's cases hold that evidence is required to support an assumed violation rate and that a defendant cannot extrapolate violation rates from language in a complaint. *See* Mot. Remand at 14–15 (citing *Armstrong*, 2016 WL 6267931, at *3; *Weston v. Helmerich & Payne Int'l Drilling Co.*, No. 13-cv-1092, 2013 WL 5274283, at *6 (E.D. Cal. Sep. 16, 2013); *Ray*, 2011 WL 6148668, at *3)). But these decisions have not survived *Arias*, in which the Ninth Circuit explicitly declined to require that a removing defendant provide evidence of its assumed violation rate. 936 F.3d at 927 ("The district court characterized [defendant's] assumed violation rates as being 'speculation and conjecture,' apparently because [defendant] did not provide evidence proving the assumptions correct. . . . But assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" (quoting *Ibarra*, 775 F.3d at 1199)); *see also Hender v. Am. Directions Workforce LLC*, No. 19-cv-01951-KJM-DMC, 2020 WL 5959908, at *6 (E.D. Cal. Oct. 8, 2020), *recons. denied*, No. 19-cv-01951-KJM-DMC, 2021 WL 2577030 (E.D. Cal. June 23, 2021) ("If the court were to be persuaded by *Armstrong* and require defendants provide information regarding complaints related to meal and rest break periods, it would run afoul of the Ninth Circuit's ruling in *Arias*."). Because plaintiff's showing is less compelling than defendants', the court accepts defendant's original assumption that putative class members missed two meal breaks and two rest breaks per week.

Using this estimate, defendants calculate that plaintiff's claims for missed meal and rest breaks put $3,013,253.32 in controversy. *See* Opp'n at 20. Defendants arrive at this figure by multiplying three numbers together: 32,767 workweeks completed by class members, 4 missed breaks per week, and the average hourly wage of $22.99 as the penalty for each missed break. *See id.* at 12; *see also* Cal. Lab. Code § 226.7(c) (employer shall pay one hour's pay for each missed meal period or rest break). The court adopts this estimate.

### B. Overtime & Minimum Wage

For its most conservative estimate of unpaid overtime wages and unpaid minimum wages, defendants assume all class members worked one unpaid hour per week. *See* Not. Removal at 16–17, 19–20. For class members who worked at least forty hours per week, defendants treat this

7

1  unpaid hour as an overtime violation, *see id.* at 16–17; for class members who worked less than
2  forty hours per week, defendants treat this unpaid hour as a minimum wage violation, *see id.* at
3  19–20.  In support, defendant points to language in the complaint alleging "class wide treatment,"
4  a "policy and practice," and a "regular[]" failure to pay minimum wage.  *See id.* at 12 (citing
5  Compl. ¶¶ 16, 22, 73).[2]  Plaintiff argues these assumptions are unreasonable, highlighting the
6  absence of evidence or explicit allegations regarding frequency.  *See* Mot. Remand at 17–19.[3]  As
7  to both claims, plaintiff proposes reducing the assumed violation rate from one hour per week to
8  thirty minutes per week.  *See id.* at 19; Davis Decl. ¶ 8.

9        Here as well, the court adopts both of defendants' assumptions.  As an initial matter, the
10 court finds neither is unreasonable on its face, and courts routinely accept such assumptions in
11 analogous contexts.  *See, e.g.*, *Jauregui*, 28 F.4th at 995 (adopting defendant's assumption of one
12 hour of unpaid work per week, where trial court had noted plaintiff's complaint alleged a "pattern
13 and practice" of wage violations); *Cabrera v. S. Valley Almond Co., LLC*, No. 21-cv-00748, 2021
14 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) (finding removing defendants' "assumptions of one
15 hour of unpaid overtime per week and one hour of unpaid minimum wages per week are
16 consistent with allegations that violations occurred 'at times' and 'on occasion,' particularly since
17 the Complaint alleges that the Labor Code violations at issue in this case are due to 'policies
18 and/or practices' on the part of Defendants").  Plaintiff has not pointed to any evidence or case
19 law supporting her proposed alternative.  Instead, plaintiff relies on the bare allegations of the
20 complaint and "Plaintiff's pre-litigation investigation," about which she provides no further
21 information.  *See* Mot. Remand at 19; Davis Decl. ¶ 8.  Because defendants' original assumption
22 /////

---

[2] Defendants also characterize the complaint as alleging "*all* putative class members were subject to overtime violations."  Opp'n at 6 (citing Compl. ¶ 47) (emphasis in original).  But the cited paragraph merely alleges that class members "regularly worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week."  This allegation does not speak to the frequency with which defendants failed to pay overtime wages.

[3] Initially, plaintiff also argued that defendants inappropriately drew unacceptably broad generalizations about scheduling based only on a recent workweek.  *See* Mot. Remand at 17–19.  Ms. DiBartolo's supplemental declaration appears to moot this issue, *see* DiBartolo Suppl. Decl. ¶¶ 8, 11, and plaintiff did not renew this argument in her reply.

is more reasonable than plaintiff's proposed alternative, the court adopts defendants' assumption that all class members were unpaid for one hour of work per week.

Based on these assumptions, defendants calculate that plaintiff's overtime claim puts $848,867.88 in controversy by multiplying three numbers together: the number of workweeks completed by employees working at least forty hours per week (24,612), one unpaid hour per week, and 150 percent of class members' average hourly wage ($34.49). *See* Opp'n at 9; *see also* Cal. Lab. Code § 510(a) (overtime is compensated at 1.5 times an employee's regular rate of pay). Defendants value plaintiff's minimum wage claim at $197,326.80 by multiplying three numbers together: the number of workweeks completed by employees working less than forty hours per week (8,154), one unpaid hour per week, and the average minimum wage during the limitations period ($12.10), *see* Opp'n at 12; defendants then double the result because double damages are available for minimum wage violations, *see id.*; *see also* Cal. Lab. Code § 1194.2 (authorizing double damages for minimum wage violations); *Jauregui*, 28 F.4th at 995 n.7 (including liquidated damages in amount-in-controversy calculation for minimum wage claim under CAFA). The court adopts both estimates.

### C. Waiting Time & Wage Statement Penalties

In connection with plaintiff's claims for waiting time and wage statement penalties, defendants assume no terminated employee was paid in full by the thirty-first day after termination, *see* Not. Removal at 20–21; Opp'n at 14–15, 20, and all pay stubs issued during the limitations period contained at least one error, *see* Not. Removal 21–23; Opp'n at 15–17, 20. Plaintiff does not propose an alternative violation rate for either claim. The court's analysis is thus limited to whether defendants' proposed assumptions are reasonable.

Defendants' proposed assumptions are reasonable. Both waiting time and wage statement penalties can be derivative of other Labor Code violations. *See Cabrera*, 2021 WL 5937585, at *10; *Nunes v. Home Depot U.S.A., Inc.*, No. 19-cv-01207, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019). The assumed frequency with which class members did unpaid work and were denied breaks therefore logically supports defendants' assumptions here. *See, e.g.*, *Cabrera*, 2021 WL 5937585, at *10 (because the court assumed "one overtime violation, one minimum

wage violation, one meal break violation and one rest period violation per week for each putative class member[, i]t follows that each of the bi-weekly wage statements Defendants issued to putative class members during the period in question contained an error of some sort"); *Nunes*, 2019 WL 4316903, at *3 ("Given the allegations, it is reasonable to assume the terminated class members suffered at least one violation (e.g., one missed meal or rest break) and were therefore not paid all wages owed upon termination."); *see also Jauregui*, 28 F.4th at 994 (rejecting district court's unwillingness to assume "that the vast majority (if not all)" terminated class members were entitled to 30 days of waiting time penalties in an analogous case). Because these two assumptions are reasonable and plaintiff offers no alternatives for comparison, the court adopts both.

In reliance on these assumptions, defendants generate their more conservative estimate for waiting time penalties—$795,637.92—by multiplying together four numbers: the number of class members terminated during the limitations period (206), 30 days of penalties for each terminated class member, the average number of hours worked per day by these employees (5.6), and the average hourly wage for all class members ($22.99). *See* Opp'n at 14–15; *see also* Cal. Lab. Code § 203(a) (authorizing recovery of up to thirty days' pay for failure to timely pay final wages); DiBartolo Suppl. Decl. ¶ 13 (putative class members terminated during the limitations period averaged 5.6 hours of work per day). Defendants value plaintiff's claim for wage statement penalties at $414,650 by adding two figures. First, defendants calculate the penalties associated with class members receiving their first noncompliant wage statement: 247 class members worked during the limitations period, each received at least one wage statement, and their first noncompliant wage statement occasioned a penalty of $50. Second, defendants calculate the penalties associated with all subsequent wage statements: the remaining 4,023 pay periods worked during the limitations period each occasioned a penalty of $100. The resulting equation looks like this: (247 pay periods) x ($50) + (4,270 – 247 pay periods) x ($50) = $414,650.00. *See* Opp'n at 17; *see also* Cal. Lab. Code 226(e)(1) (entitling employees to recover $50 for the first pay period in which they receive a noncompliant wage statement and $100 for

/////

10

each subsequent pay period in which they receive a noncompliant wage statement). The court adopts both figures.

The following chart reviews and totals the minimum amount in controversy of the claims the court adopts, as discussed above:

| Claim | Amount in Controversy |
|---|---|
| Meal and Rest Breaks | $3,013,253.32 |
| Overtime | $848,867.88 |
| Minimum Wage | $197,326.80 |
| Wage Statements | $414,650.00 |
| Final Wages | $795,637.92 |
| **Total** | **$5,269,735.92** |

Without needing to reach plaintiff's remaining claims for attorneys' fees, unreimbursed business expenses, and failure to timely pay wages during employment, the court finds defendant has shown it is more likely than not that more than $5 million dollars is in controversy here.

### III.   CONCLUSION

Plaintiff's motion to remand is **denied**.

This order resolves ECF No. 5.

IT IS SO ORDERED.

DATED: May 31, 2022.

CHIEF UNITED STATES DISTRICT JUDGE